UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALONZO DEVONNE MALONE, JR.
A/K/A REV. A.D. MALONE, JR.                                              PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:08CV-527-S

CITY OF LOUISVILLE *et al.*                                              DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Alonzo Devonne Malone, Jr., filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 complaining of events which occurred during his incarceration as a pretrial detainee at the Louisville Metro Corrections Department ("Metro Corrections").[1] Plaintiff sues the following Defendants in their individual and official capacities: the City of Louisville, Col. John Aubrey, District Judge M. Stengle, the Commonwealth's Attorney's Office, Metro Mayor J. Abramson, Metro Corrections, Medical and Mental Health Staff, Officer Mumford, Officer Redman, Officer Rone, Officer Hale, Officer Socera, and Officer Walford.[2] Plaintiff seeks punitive and compensatory damages, lost wages, and damages for pain and suffering and mental anguish.

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the complaint under 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997). For the reasons that follow, a portion of the claims will continue and the remainder will be dismissed.

---

[1] Plaintiff has been released from custody.

[2] Plaintiff lists only these Defendants in the caption of the complaint. Rule 10(a) of the Federal Rules of Civil Procedure mandates that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. *The title of the complaint must name all the parties*; the title of other pleadings, after naming the first party on each side, may refer generally to other parties" (emphasis added). In other sections of the complaint, Plaintiff additionally identifies as defendants Casey Kimmbell, Nurse Payton, Nurse Catlin, T. Cambell, T. Clark, Dr. Light, and Sgt. Dixion. Because these individuals are not listed in the caption, they are not parties to this action. Plaintiff may file a motion to amend the complaint should he wish to add these individuals as defendants.

# I.  STANDARD OF REVIEW

Upon preliminary review under 28 U.S.C. § 1915(e)(2), this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, a court must "look for plausibility in th[e] complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (internal citations omitted).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citations omitted; alteration in *Twombly*).  In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## II. ANALYSIS

The complaint is not a model of clarity and is difficult to follow. The Court will addresses Plaintiff's claims against each Defendant herein.

### A. District Court Judge Michelle Stengle

#### 1. Individual capacity

Plaintiff claims that Defendant Judge Stengle has violated his rights in state court (Case No. 08MO11425) to due process, a speedy trial, and a "show cause hearing." He also claims that she will not allow him to enter a plea without first going to Central State Hospital. Plaintiff further alleges that Judge Stengle has also denied all motions filed by him, and that Judge Stengle had him placed in custody in her courtroom in conjunction with a motion filed by Casey Kimmbell, his public defender.

The law is clear that a judge acting within the scope of her official duties and within her jurisdictional authority is absolutely immune from damages liability. *Stump v. Sparkman*, 435 U.S. 349 (1978); *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). A judge is subject to liability only for nonjudicial actions or if performed acts which were judicial in nature were taken in the "clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997). A judge acts in clear absence of all jurisdiction only if the matter acted upon is clearly outside the subject matter of her court. *Ireland v. Tunis*, 133 F.3d at 1441; *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985).

Whether or not an act is judicial depends on the nature and function of the act. *Ireland v. Tunis*, 133 F.3d at 1440. The Court must first determine whether the act is "a function normally performed by a judge." *Id*. at 1441 (quoting *Stump v. Sparkman*, 435 U.S. at 362). The Court must also look at "whether the parties dealt with the judge in his or her judicial capacity."

3

*Ireland v. Tunis*, 133 F.3d at 1441. Acting in error, maliciously, or in excess of her authority is not enough. *Stump v. Sparkman*, 435 U.S. at 355; *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001) ("'[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction.'") (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872)).

Both factors used for the functional analysis indicate the alleged wrongful acts performed by Defendant Judge Stengle were judicial in nature. Further, because Kentucky district courts (KRS §§ 24A.010 *et seq.*) and circuit courts (KRS §§ 23A.010 *et seq.*) have subject matter jurisdiction over criminal matters, Plaintiff has not shown that Defendant Judge Stengle acted "in clear absence of all jurisdiction." Plaintiff has, therefore, failed to state a claim against Defendant Stengle in her individual capacity.

### 2. Official capacity

Plaintiff has additionally failed to state a claim with respect to the official-capacity claim against Judge Stengle. State officials sued in their official capacities for damages are not considered "persons" for the purpose of a § 1983 claim. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994). Further, the official-capacity claim for damages against the state court judge is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994) ("In other words, since a[n] official-capacity claim for retroactive relief is deemed to be against the State whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment."); *Bennett v. Thorburn*, No. 86-1307, 1988 WL 27524, at *1 (6th Cir. Mar. 31, 1988) (concluding that an official capacity suit against a judge who presided over state court litigation was barred by the Eleventh Amendment).

Accordingly, all claims must be dismissed against Defendant Judge Stengle.

**B. Commonwealth's Attorney's Office**

Plaintiff has not identified any particular individual in the Commonwealth's Attorney's Office who engaged in any alleged wrongdoing. To the extent he is attempting to sue the Commonwealth's Attorney himself in his supervisory capacity, "[r]espondeat superior[3] is not a proper basis for liability under § 1983," *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006), and Plaintiff has failed to state any facts appropriate for imposing supervisory liability in this action. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior."). Moreover, the Commonwealth's Attorney's Office, as a state entity, is not a "person" under § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and it is immune from suit under the Eleventh Amendment. *See Whittington v. Milby*, 928 F.2d 188 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332 (l979)); *York v. Warren County Commonwealth Attorney's Office*, Civil Action No. 1:08CV-P16-R, 2008 WL 339505, at *2 (W.D. Ky. 2008). For these reasons, the claims against the Commonwealth's Attorney's Office must be dismissed.

**C. Metro Corrections**

Louisville Metro Department of Corrections is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir.1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). Therefore, the claims against the jail must be dismissed.

---

[3]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

**D. Official-capacity claims against municipal Defendants and all claims against the City of Louisville**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official capacity claims against all of the municipal Defendants,[4] therefore, are actually against Louisville Metro Government, which Plaintiff also names as a defendant. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is

---

[4]The municipal Defendant are: Col. John Aubrey of the Sheriff's Department; Louisville Metro Mayor Jerry Abramson; Unknown Medical and Mental Health Staff at Metro Corrections; and Metro Corrections Officers Redman, Hale, Mumford, Socra, Walford, and Rone.

actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm, and nothing in the complaint demonstrates that Defendants' actions occurred as a result of a policy or custom implemented or endorsed by the Louisville Metro Government. Consequently, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim. Consequently, the official-capacity claims against all municipal Defendants and all claims against the Louisville Metro Government will be dismissed for failure to state a claim upon which relief may be granted.

### E. Individual-capacity claims against municipal Defendants

#### 1. Col. Aubrey, Mayor Abramson, and Officer Walford

In order to assert a cognizable §1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Allegations premised upon mere conclusions and opinions fail to state an adequate claim, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim. *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983).

Furthermore, a complaint filed under § 1983 must also show a causal connection between the named defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by the defendants was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986). "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery County*, 989 F.2d 885, 889 (6th Cir. 1993). To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id.* When the theory of causation is a matter of pure speculation and is nothing more

than an hypothetical argument, the pleadings are insufficient to sustain a compensable § 1983 claim. *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994).

Other than listing Aubrey, Abramson, and Walford as Defendants, Plaintiff fails to assert any wrongdoing against them. Because Plaintiff fails to set forth any specific facts demonstrating a cognizable constitutional claim against these Defendants, the complaint must be dismissed against them.

### 2. Medical and Mental Health Staff

At the outset, the Court notes that Plaintiff was not a convicted prisoner at the time of the events alleged; he was a pretrial detainee. As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Id.* at 685-86. To sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such a claim "has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[T]he evidence need only show that 'the medical *need* at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (emphasis added) (quoting *Farmer*, 511 U.S. at 834). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official

being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Estelle*, 429 U.S. at 106. The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Id.* at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis fail to state a cause of action. *Id.* at 105-06. Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106.

Plaintiff alleges that he was denied proper treatment for stomach problems and vomiting occurring during his incarceration at Metro Corrections. Plaintiff specifically names some non-Defendant medical and mental health staff associated with his treatment (Dr. Light, Nurse Payton, Officer Lucas, Nurse Reese, Officer Tobin, Officer Anthony, Dr. Smith, Sgt. Janette, Sgt. Dobson, and Nurse Brown) and does not identify others. Plaintiff has not alleged deliberate indifference to a serious medical need with respect to his stomach complaints against any named Defendant and therefore has failed to state a constitutional claim against them. Moreover, Plaintiff's claim of deliberate indifference against "Medical and Mental Health Staff" is too broad to state a claim.

Plaintiff also complains that "Metro Correction and the mental health staff kept trying to put me on medication until I finally obey their wishes. But Dr. Singleton and Dr. Johnson felt I didnt need medication." Plaintiff claims that he asked Dr. Light to move him to an "older man dorm" but that Dr. Light refused unless Plaintiff started taking "Toraizine" which Plaintiff took

reluctantly. Plaintiff then claims that he was denied his medication on August 23 and 31, 2008. These facts do not demonstrate deliberate indifference to any serious medical need. At most, he has stated a disagreement in treatment and negligence, neither of which constitutes an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97 (1976).

Plaintiff further claims that "Officer Mumford and mental health discriminated and created an atmosphere of mistrust and cruel and unusual punishment for this plaintiff." This claim is broad and conclusory and fails to state a claim upon which relief may be granted.

Finally, Plaintiff claims that he was discriminated by medical and mental health because his bottom dentures were taken from his cell on July 27 while he was in the day room. He fails to allege any fact suggesting any discrimination on any basis with respect to the taking of his denture. Further, Plaintiff has failed to demonstrate any Fourteenth Amendment violation in the taking of his dentures. He does not allege that the deprivation occurred as a result of an established policy, and he fails to show that he does not possess an adequate post-deprivation remedy to redress this alleged deprivation of property pursuant to a "random and unauthorized act." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (citations omitted).

### 3. Officer Hale

Plaintiff claims that Defendant Officer Hale choked him on July 26, 2008, on the booking floor; then placed Plaintiff in isolation; and thereafter continued his assault on Plaintiff throughout his shift. Plaintiff claims that Sgt. Ward, who is not a defendant, ensured that he was booked and seen by medical and classification. Officer Hale then placed Plaintiff back in isolation because Plaintiff "threw an sermon on the counter from the Book of John."

Temporary placement in isolation/segregation in and of itself does not give rise to a constitutional claim because it does not impose "atypical and significant hardship on the inmate

11

in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Court will, however, allow claim of excessive force[5] to proceed against Officer Hale.

### 4. Officer Mumford

"[P]retrial detainees held in [] jail are protected under the Fourteenth Amendment, which provides that 'a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Under the Fourteenth Amendment's Due Process Clause, the proper inquiry is whether the challenged action "'amounts to punishment of the detainee.'" *Leary v. Livingston County*, 528 F.3d 438, 450 (6th Cir. 2008) (quoting *Wolfish*, 441 U.S. at 535). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "'punishment.'" *Wolfish*, 441 U.S. at 539. "Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* "'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Wolfish*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff alleges that on August 23, 2008, Defendant Officer Mumford allowed another inmate to pass gas in Plaintiff's face; that both the officer and other inmate laughed; and that the inmate slapped Plaintiff's nose. Plaintiff does not allege that Mumford hit him, and he alleges

---

[5]The Fourth Amendment applies to an officer's use of force during a booking procedure. *See Harris v. City of Circleville*, 583 F.3d 356, 372 (6th Cir. 2009) (citing *Lawler v. City of Taylor*, 268 F. App'x 384 (6th Cir. 2008)).

nothing more than a *de minimis* force by the inmate. He, therefore, fails to state a Fourteenth Amendment claim.

Plaintiff additionally reports on August 24, 2008, that he was denied "access to fresh water to drink or wash hands or flush toilet, by Officer Mumford - Ofc Wiggins, The Sgt Garcia never came to talk to me." This is the only occasion that Plaintiff claims Defendant Mumford denied him access to fresh water,[6] and he does not indicate that this was for any punitive purpose. Plaintiff has not alleged facts demonstrating a cognizable Fourteenth Amendment claim.

### 5. Officer Rone

Plaintiff alleges that Defendant Officer Rone asked Plaintiff to move to another dorm because another inmate wanted Plaintiff to move. Plaintiff told Officer Rone and the inmate "No." After agreeing to move, Officer Rone and "Mental Health" placed Plaintiff in isolation. Plaintiff asserts no facts which illustrate how his particular confinement itself is a liberty interest imposing "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Absent such showing, Plaintiff is not entitled to due process protection.

### 6. Officer Socera

Plaintiff alleges that on numerous occasions, Defendant Officer Socera degraded him. This verbal harassment fails to state constitutional claim. *See Ivey v. Wilson*, 832 F.2d 950, 955

---

[6]Elsewhere in the lengthy complaint, Plaintiff alleges that a couple of weeks later he was dehydrated to the extent that nurses were unable to draw blood. Nowhere, however, does he allege that the dehydration was due to this apparently one-time denial of access to water in his cell by Officer Mumford, and even under liberal construction of the complaint, the Court cannot make such a causal leap. Plaintiff also alleges in the complaint that on an unspecified date the water in his cell was off for 14½ hours, but he does not attribute this to Officer Redman or any Defendant, and it was only for a limited amount of time.

(6th Cir. 1987). Plaintiff claims that on September 6, 2008, Officer Socera "threw me against the wall because I ask for an phone the[n] wouldnt allow me to use the phone." Plaintiff, instead, had another inmate call Plaintiff's church and let them know that Plaintiff could not have visitors on September 7, 2008. The Court will allow Plaintiff's Fourteenth Amendment excessive-force claim regarding his being thrown against the wall to proceed against Officer Socera.

### 7. Officer Redman

Plaintiff alleges, "[Defendant] Officer Redman allow an inmate to degrade and demoralize me. By saying that my mother was an slave, for his mother, and that she was an black Bitch." When Plaintiff threatened to throw tea on the inmate, Officer Redman closed the food slot on the cell door and refused to allow Plaintiff to call his mother or attorney. Plaintiff further claims that on September 7, 2008, he asked to use the restroom, and after an hour he "was drag by my arm and made to appoligiz by Redman."

As already observed, verbal abuse alone is insufficient to state a constitutional violation under § 1983. Because Plaintiff asserts that the closing of the food slot and refusal to use the telephone were in response to Plaintiff's threat to throw tea on another inmate, the Court finds no Fourteenth Amendment violation. In addition, while he claims several times in the record that he was not allowed to call his attorney and/or his mother, the authorization, at times, was merely delayed,[7] and he has failed to allege a total restriction on all means of communication and has failed to allege any prejudice to any pending litigation or that he was otherwise denied access to courts. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (advising that no actual injury occurs

---

[7]For example, Plaintiff claims that on an unspecified date, he began asking to use the telephone during the 7 am to 3 pm shift but was not allowed to use the phone until after 8:30 pm.

without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented"). Finally, the Court finds that Plaintiff's claim that Officer Redman dragged him by his arm demonstrates no more than *de minimis* force and did not violate Plaintiff's constitutional rights.

### 8. First Amendment denial of right to exercise religion

Plaintiff claims that Defendant Officers Redman, Socera, and Mumford denied him his right to exercise his religious preference by denying him access to the chaplin on six days in August 2008. He further alleges that on Sunday, September 30, 2008, Officer Rone and non-defendant Officer Plate cursed him out because he asked for something for his stomach and that both officers refused to allow Plaintiff or anyone else in the dorm to go to church services. Plaintiff also claims that Officers Rone and Socera insinuated that Plaintiff was a homosexual because he is a Christian. The Court will allow these First Amendment claims to proceed.

## III. CONCLUSION

Upon initial review of the complaint, the Court will allow the following claims to continue: the claim of excessive force against Officer Hale in his individual capacity, the claim of excessive force against Officer Socera in his individual capacity, and the claim of the denied right to exercise religion against Defendants Redman, Socera, Mumford, and Rone, in their individual capacities.

The Court will enter separate Orders consistent with this Memorandum Opinion.

Date:

cc: Plaintiff, *pro se*
 Defendants
 Jefferson County Attorney
4411.005